# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:09-cr-93-FDW-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| vs. | )    **ORDER**<br>) |
| DARRELL RICARDO LEWIS, | )<br>)<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the Court on the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 20), Defendant's objections to the M&R (Doc. No. 23), and Government's response to Defendant's objections to the M&R (Doc. No. 25).

## I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider *de novo* any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3).

## II. BACKGROUND

At the time the M&R was issued, Defendant was charged in a one count bill of indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Defendant filed, through counsel, a Motion to Suppress and Memorandum in Support of that motion evidence and statements that led to his indictment and arrest (Docs. Nos. 11, 12). Defendant contends that the search of the vehicle he was driving was in violation of the Fourth Amendment.

Defendant also contends that he involuntarily and unintelligently waived his Miranda rights before making incriminating statements in violation of the Fifth Amendment. Defendant asserts that as a result of these alleged violations, the evidence and statements should be suppressed.

An evidentiary hearing was held on March 12, 2010, before the Magistrate Judge, and Defendant appeared with counsel. The Magistrate Judge entered the M&R on March 24, 2010, recommending Defendant's suppression motion be denied (Doc. No. 20). Defendant timely filed objections on April 13, 2010 (Doc. No. 23). The Government filed a response in opposition to Defendant's objections (Doc. No. 25). The Court has carefully examined the record, including listening to the recording of the suppression hearing and reviewing the video of the traffic stop (Government's Exhibit 1).

### III. DISCUSSION

Defendant offers several objections to the findings contained in the M&R and those objections are reviewed *de novo*.[1] After conducting a careful review of the M&R, the Court finds no error in, summarily agrees with, and adopts those portions of the M&R to which no objection was raised. The Court now turns to Defendant's specific objections.

**A. The Traffic Stop**

Defendant's first contention challenges the M&R's findings that Defendant was not under arrest at the time of the vehicle search, thus Arizona v. Gant, 129 S. Ct. 1710 (2009), is inapplicable. Defendant argues that he was detained an unreasonable amount of time for purposes of a routine traffic stop. Despite the fact that Defendant was not handcuffed or placed in the back of a police

---

[1] The Court notes some of Defendant's contentions do not specifically object to errors contained in the M&R; instead, Defendant generally criticizes the M&R's findings. General or conclusive objections result not only in a loss of *de novo* review by the district court, but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003). Consequently, the Court only reviews Defendant's specifically-raised objections to the M&R's findings.

cruiser, Defendant argues that his detention was a *de facto* arrest prior to Officer Carey's initial search of the vehicle. Thus, Defendant contends the M&R erred by ignoring the applicability of Gant to the present facts, which Defendant argues precludes the vehicle search.

An arrest is defined using an objective standard, which asks whether "the suspect's freedom of action is curtailed to a degree associated with formal arrest." United States v. Elston, 479 F.3d 314, 319 (4th Cir. 2007). A seizure occurs only when "in view of the totality of the circumstances surrounding the 'stop,' a reasonable person would not feel free to leave or otherwise terminate the encounter." United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002). Moreover, a police officer may conduct an investigatory detention or seizure, commonly referred to as a Terry stop, without violating the Fourth Amendment when the officer possesses "a reasonable and articulable suspicion" that criminal activity is afoot. United States v. Smith, 396 F.3d 579, 583 (4th Cir. 2005); see also Terry v. Ohio, 392 U.S. 1, 30 (1968). The Fourth Circuit has explicitly recognized that a valid Terry stop may involve "drawing weapons, handcuffing a suspect, [or] placing a suspect in a patrol car for questioning . . . ." United States v. Davis, No. 08-5160, 2010 WL 2465019, at *3 (4th Cir. June 15, 2010) (citing Elston, 479 F.3d at 320). The specific circumstances of the detention dictate whether an officer "exceeds the limits of a Terry stop." Davis, 2010 WL 2465019, at *3.

Defendant argues the duration of his detention was over two hours and well beyond the reasonable length of a lawful traffic stop. Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop. Whren v. United States, 517 U.S. 806, 810 (1996). The maximum acceptable length of a routine traffic stop cannot be stated with mathematical precision; instead, the appropriate constitutional inquiry is whether the detention lasted longer than necessary, given its purpose. See Florida v. Royer, 460 U.S. 491, 500 (1983) (recognizing when

assessing the length of detention, courts should take into account whether police diligently pursued their investigation). If the driver obstructs a police officer's efforts, a longer traffic stop would not be unreasonable. See United States v. Sharpe, 470 U.S. 675, 687-88 (1985) (noting a twenty-minute traffic stop was a reasonable Terry stop when police acted diligently and reasonably).

Contrary to Defendant's assertions, the video of the traffic stop shows Defendant was only detained for approximately ten minutes before Officer Carey conducted the vehicle search.[2] During that ten-minute period, police officers ran background checks on the vehicle registration and Defendant's criminal history. Officer Carey instructed Defendant to stand behind the vehicle, frisked Defendant for weapons, and briefly asked Defendant routine questions. Defendant provided vague responses regarding where he was coming from, where he was going, who he was with, and who owned the vehicle. Defendant's failure to provide accurate, precise information contributed to the slight delay in which he complains. As a result, Defendant's ten-minute detention was reasonable since the duration was no longer than necessary for police to complete their investigation.

Defendant contends that he was effectively under arrest because Officer Carey believed at the time of the search that Defendant would soon be under arrest for driving with a revoked license. However, an arresting officer's subjective view has "no bearing on whether the detention constitutes an arrest." Elston, 479 F.3d at 319. Furthermore, a defendant's subjective perception that he is not free to leave is "insufficient to convert a Terry stop into an arrest." Id. Rather, an arrest is defined using an objective standard, which asks whether a suspect's freedom has been "curtailed to a degree associated with a formal arrest." Id. Here, Defendant's freedom was not significantly curtailed;

---

[2] The relevant question for analysis is whether the duration of the stop *prior* to the vehicle search was unreasonable. After the handgun was found underneath the driver seat of the vehicle, police had probable cause to arrest Defendant for at least carrying a concealed weapon. At that point the Terry stop converted into a lawful arrest. The remainder of the traffic stop lasted around an hour, but that extended length of time is irrelevant to the Court's analysis on this particular objection raised by Defendant.

Defendant was not handcuffed or placed in the back of a locked police cruiser. Instead, Defendant was reasonably detained, under Terry, for a brief ten-minute period before police officers conducted the protective vehicle search. Accordingly, the Court agrees with the M&R's findings that Defendant was not under arrest at the time of the vehicle search, and thus the facts do not support a Gant application with regard to the initial Terry search.

In fact, the Fourth and D.C. Circuits have explicitly recognized that the reasoning in Gant does not apply to Terry stops. United States v. Griffin, 589 F.3d 148, 154 n.8 (4th Cir. 2009); see also United States v. Vinton, 594 F.3d 14, 24 n.3 (D.C. Cir. 2010); United States v. Calloway, No. 7:09-CR-34, 2010 WL 445905, at *2 n.2 (W.D. Va. Feb. 8, 2010). This reasoning does not extend to protective searches under Michigan v. Long, 463 U.S. 1032 (1983), because in a Terry stop where the suspect has not been arrested, "the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is complete." Griffin, 589 F.3d at 154 n.8 (quoting Gant, 129 S. Ct. at 1724 (Scalia, J., concurring)).

Even if the Court assumed Defendant was in fact under arrest at the time of the vehicle search, there would be no Fourth Amendment violation because the search is permissible under the first prong of Gant. In Gant, the Supreme Court held that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. at 1723. In the present case, Defendant was standing unrestrained near the rear of the vehicle, within reaching distance of the passenger compartment. Accordingly, the Court agrees with the M&R's finding that Gant is not applicable to Defendant's contention.

### B. The Vehicle Search

Defendant's second, third, and fourth contentions are related and challenge the M&R's findings which conclude the search of the vehicle was justified as a protective search. Specifically, Defendant objects to the finding that Officer Carey reasonably believed Defendant was (1) dangerous, and (2) might possibly gain control of any weapons inside the vehicle. Defendant argues that the totality of the circumstances did not create reasonable suspicion to justify the vehicle search. In the context of a Terry stop, the search of an automobile's passenger compartment, limited to those areas in which a weapon may be placed, is permissible if the police officer possesses a reasonable belief that the suspect is dangerous and may gain immediate control of weapons. Long, 463 U.S. at 1049; United States v. Holmes, 376 F.3d 270, 276 (4th Cir. 2004).

The M&R listed the following set of factors establishing reasonable suspicion: (1) a missing tag light which could be construed as a driver's attempt to evade detection; (2) the Defendant's abrupt turn into the gas station; (3) the lateness of the hour; (4) a known high crime area of town; (5) Defendant's apparent attempt to quickly exit the vehicle after the stop; (6) the fact that the driver and his passenger fit the description of a "salt and pepper" crew known to be involved in criminal activity in the neighborhood; (7) observation of tools in the vehicle that might be used for breaking and entering[3]; (8) Defendant's nervous behavior; (9) Defendant's vague responses regarding where he was coming from, going, and who he was with; (10) the fact that the vehicle did not belong to either occupant; (11) a driver with a revoked license; and (12) vehicle occupants with backgrounds consisting of numerous arrests for drug, breaking and entering, and weapons violations.

---

[3] The Court notes these some tools (i.e. walky-talkies, hammers, screwdrivers) were visible within the passenger compartment, while other tools (i.e. three reciprocating saws) were discovered in the trunk after Defendant was arrested. Evidence gathered *after* the protective search may not be used to justify the initial Terry search. Accordingly, the Court does not consider any reference to tools in the trunk as a factor elevating reasonable suspicion to justify the initial protective search.

The Court looks to the totality of the circumstances in determining whether reasonable suspicion exists. See United States v. Arvizu, 534 U.S. 266, 273 (2002). Nervousness or suspicious behavior of a defendant in a "high crime area" at a late hour is a relevant factor that may be considered in a Terry stop analysis. See, e.g., Illinois v. Wardlow, 528 U.S. 119, 124 (2000); United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Defendant's furtive or abrupt movement as officers approach is another relevant factor giving rise to reasonable suspicion. See United States v. Spearman, 254 F. App'x 178, 182 (4th Cir. 2007). Courts may also consider a suspect's evasive behavior in analyzing the existence of reasonable suspicion to believe that an individual is armed and dangerous. Griffin, 589 F.3d at 153 (citing United States v. Mayo, 361 F.3d 802, 807-08 (4th Cir. 2004)).

Giving guidance to this matter, United States v. Walker applied a combination of similar factors in determining whether police had reasonable suspicion to conduct a vehicle protective search. No. 3:08-CR-41, 2009 WL 385247, at *3 (E.D. Va. Feb. 13, 2009). In that case, the suspect's vehicle was stopped just after midnight in a high crime area. Id. The suspect immediately jumped out of the car when police approached to ask questions. Id. The suspect appeared nervous as his voice was shaky and the suspect gave inconsistent information about his place of residence. Id. Based solely on those circumstances, police officers detained the suspect and conducted a protective search of his vehicle. Id. The court found police officers properly acted with reasonable suspicion based on those factors. Id.

Similar to the facts in Walker, Defendant's vehicle was stopped at 11:45pm in a high crime area. Defendant initially jumped out of the vehicle as Officer Carey was approaching. Defendant gave vague answers to Officer Carey's questions and could not articulate who actually owned the vehicle or how he came in possession of the vehicle. Defendant also appeared nervous, running his

hands over his head, and visibly sweating. In light of Walker, the Court may rely on the foregoing factors to conclude Officer Carey had reasonable suspicion to search the vehicle.

Moreover, Defendant and the passenger, Houston Steven Harrelson, matched the description of individuals suspected in recent incidents of breaking and entering in the area. When Officer Carey initially ran a background check, the officer learned of Defendant's criminal history, which included numerous arrests for drug, breaking and entering, and weapon violations. Officer Carey testified that Defendant's criminal history of weapons violations raised his suspicion in the present traffic stop. Though this alone would not be sufficient, a review of all these factors indicate reasonable suspicion based on the totality of the circumstances. Accordingly, the Court agrees with the M&R's finding that reasonable suspicion existed to justify the protective search.

Defendant also challenges the M&R's finding that Officer Carey reasonably believed Defendant was within reaching distance of weapons inside the vehicle at the time of the search. To justify a protective search, Long requires a police officer to have reasonable suspicion that a suspect may gain immediate control of weapons inside the vehicle. 464 U.S. at 1049. This is based on the rationale that an unsecured recent occupant of a vehicle "can be a real, potential threat to police officers in the present . . . ." United States v. Parson, No. 3:09-CR-377, 2010 WL 1417850, at *2 (E.D. Va. Apr. 6, 2010).

The Fourth Circuit recently affirmed the principles supporting a protective search in Griffin. 589 F.3d at 151. In that case, a police officer conducted a lawful traffic stop, removed the suspect from the vehicle, Terry-frisked the suspect, and then placed the suspect in handcuffs. Id. Police officers briefly detained the suspect in the back of a police cruiser while they performed a protective search of the suspect's vehicle. Id. Despite the fact that the suspect was handcuffed in the back of the police cruiser, he posed a risk of gaining immediate access to weapons inside the vehicle because

he presumably would have regained access after being released from the brief detention. Id. at 154 (citing Elston, 479 F.3d at 320).

Compared to the suspects in Griffin and Elston, who were detained in the back of a police cruiser, Defendant was unsecured standing behind the vehicle. Defendant could have easily gained access to the passenger compartment at the time of the vehicle search. Therefore, the Court agrees with the M&R's finding that it was objectively reasonable for Officer Carey to believe Defendant was within reaching distance of weapons. Accordingly, the Court agrees with the M&R's finding that the vehicle search was a lawful protective search based on Officer Carey's reasonable suspicion.[4]

**C. Defendant's Statements**

Defendant's final contention challenges the M&R's finding that Defendant's waiver of his Miranda rights was made knowingly and intelligently. Specifically, Defendant objects to the M&R's finding that Defendant was not coerced or deceived by officers into giving a written incriminating statement.

Under Miranda v. Arizona, any statement made during a custodial interrogation is presumed involuntary unless the officer provides specific warnings. 384 U.S. 436, 467-73 (1966). For an individual to waive the effectuation of his rights, the relinquishment must be "voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." United States v. Cristobal, 293 F.3d 134, 139-40 (4th Cir. 2002) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The waiver must also be made with "full awareness of both the nature of the

---

[4] The Court recognizes a protective search does not justify the search of a vehicle's trunk. Defendant has not specifically objected to the search of the trunk, but argues generally that the evidence obtained from the vehicle should be suppressed. It also appears the Government has not relied upon any evidence obtained from the trunk. The search of the trunk might raise an application of Gant because the search was conducted after Defendant's arrest. However, Defendant failed to specifically raise this issue of the trunk search in his motion, at the suppression hearing, or in Defendant's objection to the M&R. Therefore, this issue is not before the Court for review.

right being abandoned and the consequences of the decision to abandon it." Cristobal, 293 F.3d at 139-40. Meanwhile, a defendant's invocation of his Miranda rights must be clear and unambiguous. Davis v. United States, 512 U.S. 452, 459 (1994). If a defendant initiates conversation with police and gives a statement freely and voluntarily without any compelling influence, then there is no Miranda violation. Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980).

Here, the evidence supports a finding that Defendant was fully informed and waived his Miranda rights on two separate occasions. First, Defendant was read his rights immediately after he was arrested during the traffic stop. Defendant affirmatively responded that he understood his rights. In the police cruiser, Defendant voluntarily and repeatedly stated that he "could not wear the gun charge." The Court has reviewed the video of the stop, and there is no evidence that Defendant's statements were in response to police questioning. Instead, Defendant initiated conversation with police officers in an attempt to obtain a lesser charge.

Defendant's second waiver of his Miranda rights occurred when Defendant initialed a written "Adult Waiver of Rights" in the police car approximately a block from the police station (Government's Exhibit 2). Defendant was concerned about facing gun charges in light of his criminal history. Defendant agreed to cooperate in hopes of receiving a lesser charge. Police officers said they would make a recommendation but that they could not make any guarantees about an outcome. Defendant then signed a written statement accepting responsibility for the gun possession within four minutes of executing the written waiver. In exchange for Defendant's statement, as well as an agreement to provide substantial assistance to the officers, Officer Carey agreed not to include the weapon possession charge at booking. The federal indictment for Defendant's unlawful firearm possession was filed over nine months later. No evidence supports Defendant's contention that police officers made false promises or coerced Defendant into a waiver.

Thus, the evidence shows Defendant voluntarily and intelligently waived his <u>Miranda</u> rights before making incriminating statements.

Finally, Defendant contends the fruit of the poisonous tree doctrine excludes all statements made after the alleged unlawful vehicle search. <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963). However, the Court has already determined that the vehicle search was lawful and is not persuaded by Defendant's argument.

### IV. CONCLUSION

The Court finds that the M&R's findings are supported by the record and the conclusions of law are consistent with current case law. Accordingly, the Court OVERRULES all Defendant's objections and ACCEPTS and ADOPTS the M&R's recommendation that Defendant's Motion to Suppress (Doc. No. 11) be DENIED.

IT IS SO ORDERED.

Signed: June 25, 2010

_____
Frank D. Whitney
United States District Judge